UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00520-RGJ

**JEFFREY FULKERSON**                                                             **PLAINTIFF**

**VS.**

**KEEGAN KIRKPATRICK, et al.**                                       **DEFENDANTS**

**MEMORANDUM OPINION
AND ORDER**

Six months after fact discovery closed in this case, Defendants Keegan Kirkpatrick, et al. ("Defendants") attached a document, the Nelson County Sheriff's Office ("NCSO") General Directives Manual, to their Motion for Partial Summary Judgment. Defendants had not previously produced that document to Plaintiff Jeffrey Fulkerson ("Plaintiff") in discovery.

Two related motions followed. First, Defendants filed a Motion for Leave to File Supplemental Disclosures, explaining their belated production of the NCSO General Directives Manual and eleven other documents was a miscommunication and oversight. (DN 42). Second, Plaintiff filed a Motion to Exclude the untimely disclosed evidence from use in Defendants' dispositive motion and at trial. (DN 50). These Motions are fully briefed and have been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(2)(A). (DN 5).

I. Background

In this 42 U.S.C. § 1983 civil-rights action, Plaintiff alleges that a Nelson Country Sheriff Deputy, Keegan Kirkpatrick ("Deputy Kirkpatrick"), assaulted him outside of his home. (DN 1). According to Plaintiff, Deputy Kirkpatrick punched him and tackled him to the ground, causing him to hit his head on some machinery. (*Id.*). The incident was caught on Plaintiff's home

surveillance cameras. (*Id.*). Plaintiff further alleges that Deputy Kirkpatrick's Sergeant, Brian Voils ("Sergeant Voils"), attempted to cover up the assault by threatening to charge Plaintiff with falsifying a police report if he made a complaint. (*Id.*).

Fact discovery in this case closed on December 31, 2024. (*See* DN 22). Plaintiff's expert disclosure deadline was January 31, 2025, Defendants' expert disclosure deadline was April 2, 2025, and expert discovery closed on May 31, 2025. (*Id.*). On June 23, 2025, Defendants filed a Motion for Partial Summary Judgment. (DN 32). In doing so, Defendants attached an exhibit that had never been produced to Plaintiff during fact or expert discovery – the NCSO General Directives Manual. (*See* DN 32-9). Plaintiff's Response to Defendants' Partial Motion for Summary Judgment challenged the use of this information in Defendants' Motion and at trial. (DN 39). Plaintiff emphasized that these documents were identified in Defendants' initial disclosures and were requested by Plaintiff in discovery but were not previously produced in discovery.

On the same day Plaintiff filed his response, he requested a telephonic conference with the Court to discuss Defendants' late disclosure. (*See* DN 38). The Court scheduled the conference for July 31, 2025. (*Id.*). Two days after the Court scheduled the conference, Defendants filed their Motion for Leave to File Supplemental Disclosures. (DN 42). In that Motion, Defendants explain that they intended to produce the documents with their expert witness disclosure on April 1, 2025, but that "due to a miscommunication with Counsel's staff," only the expert witness disclosures were filed and served. (*Id.*). To Defendants, this error was an "honest oversight" that they moved to rectify as soon as they became aware. (*Id.*). Of note, the supplemental disclosures that Defendants wish to offer go beyond the NCSO General Directives Manual and list eleven additional documents, including:

(1) Deputy Kirkpatrick's personnel file in Nelson County

(2) Defendant Kirkpatrick's personnel file in LaRue County;

(3) Sergeant Voils' personnel file;

(4) EPO Documentation 22-D-00162;

(5) Plaintiff's records from NCDC 10-16-2022;

(6) 10-15-2022 call from Plaintiff to Nelson County Dispatch;

(7) NCSO Directives Manual;

(8) Plaintiff 2022 CFS Log;

(9) Plaintiff Citation 9-12-2024

(10) Redacted Body Camera Footage 9-12-2024;

(11) Plaintiff CFS Log 12-1-2022

(12) Fulkerson Call History 4-1-2025

(DN 42-1).

During the telephonic conference on July 31, 2025, Plaintiff requested permission to file a Rule 37(c) motion to exclude Defendants' untimely disclosed evidence from consideration. After hearing arguments from both sides on the dispute, the Court permitted Plaintiff to file a Rule 37(c) motion to exclude and implemented an expedited briefing schedule. (DN 48). Plaintiff's Motion to Exclude Untimely Disclosed Evidence (DN 50) is now fully briefed.

## II. Legal Standard

Federal Rule of Civil Procedure 37(c) provides exclusion as the remedy for a party's failure to provide information or identify a witness as required by Rule 26(a) or (e). Specifically, the Rule states that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.*

Instead of or in addition to exclusion, the court may "order payment of the reasonable expenses, including attorney's fees, caused by the failure;" "may inform the jury of the party's failure; and" "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." *Id.* at (c)(1)(A)-(C).

In assessing whether a party's failure to disclose was "substantially justified" or "harmless," courts within the Sixth Circuit consider five factors:

(1) The surprise to the party against whom the evidence would be offered;
(2) The ability of that party to cure the surprise;
(3) The extent to which allowing the evidence would disrupt the trial;
(4) The importance of the evidence;
(5) The nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015). The *Howe* test is meant to separate "'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bentley v. Highlands Hosp. Corp.*, No. 15-97-ART-EBA, 2016 WL 5867496, at *11 (E.D. Ky. Oct. 6, 2016) (citing *Howe*, 801 F.3d at 747, 749). However, Rule 37(c)(1) requires that forgiveness for late disclosures "be earned" and it "neither comes automatically nor easily." *Id.*

### III. Arguments

Plaintiff argues that for the items listed in Defendants' supplemental disclosures, Defendants either: failed to timely produce items they previously disclosed; failed to produce items Plaintiff had requested through discovery; or wholly failed to timely disclose items they intend to rely upon at trial. (DN 50-1). Plaintiff states that each of the proposed supplemental disclosures is "unquestionably untimely" because none were disclosed or produced before the fact discovery deadline of December 31, 2024. And, even if Defendants had produced the documents with their expert disclosures on April 1, 2025, Plaintiff argues the disclosures would still be untimely.

4

Plaintiff submits that none of Defendants' failures can be considered harmless or substantially justified because the *Howe* factors all weigh heavily against the Defendants. Exclusion of Defendants' late supplemental disclosures, Plaintiff concludes, is the appropriate remedy.

Defendants maintain their untimely disclosures were an inadvertent, harmless mistake that they have continued to apologize for to the Plaintiff, to his counsel, and to the Court. (DN 52). The *Howe* factors, in Defendants' opinion, all weigh in favor of finding their untimely disclosures were substantially justified and harmless. (*Id.*). Defendants point out that Plaintiff has now been in possession of the documents identified in the proposed supplemental disclosures since August 4, 2025, allowing Plaintiff to incorporate them into his trial strategy and minimizing any harm or prejudice to Plaintiff. (DN 53). Defendants find Plaintiffs' position that Defendants should have produced the documents even before the April 1, 2025 expert disclosure deadline to be "inaccurate and misleading." (DN 52). The materials at issue, Defendants explain, were being supplemented because their expert relied upon such materials in preparing his report and forming his opinions. (*Id.*). Because expert discovery did not close until May 31, 2025, Defendants argue their disclosure of the proposed supplemental disclosures were only a few weeks late.

In reply, Plaintiff emphasizes Defendants had multiple opportunities to explain when they came into possession of the discovery at issue but have declined to do so. (DN 55). Plaintiff suspects Defendants are hiding such dates because they received the information prior to the December 31, 2024 fact discovery deadline. (*Id.*). To support this theory, Plaintiff identifies that Defendants used at least one of these documents in part during a witness' deposition one month before fact discovery closed. (*Id.*). Plaintiff also points out how one of the exhibits to Defendants' Motion to File Supplemental Disclosures appears to be a screenshot of the "properties summary" for the "supplemental initial disclosures" that was created on February 18, 2025. (DN 50-1, at

5

PageID # 824 (citing DN 42-2)). Because all of the materials listed in Defendants' proposed supplemental disclosures constitute "clear pieces of fact discovery," Plaintiff reiterates that Defendants should have produced such materials prior to December 31, 2024.

## IV. Analysis

Defendants admit they failed to timely disclose relevant discovery pursuant to Rule 26. The question is whether Defendants find dispensation under the "unless" clause of the Rule 37(c)(1) by proving their failure was substantially justified or harmless?

First, the Court must separate Defendants' proposed supplemental disclosures into two categories: (1) those that Defendants identified in their Initial Disclosures and/or that Plaintiff requested in written discovery (Items (1)-(7) from Defendants' Motion); and (2) those that were never requested by Plaintiff and were first identified in Defendants' expert report (Items (8)-(12) from Defendants' Motion).

### A. Defendants' Proposed Supplemental Disclosures (8)-(12)

These items were never requested by Plaintiff in discovery and were first identified in Defendants' expert's (Major Batterton's) April 1, 2025 report. The first three *Howe* factors generally weigh against exclusion of Items (8)-(12). Plaintiff's surprise at the late disclosure of these documents is minimal. Although Defendants failed to attach the documents to Major Batterton's report, had Plaintiff read and evaluated the report, he would have known of the documents' existence and Defendants' intent to use such documents in expert discovery. And expert discovery did not close until May 31, 2025, meaning Defendants' supplemental disclosures were roughly two months late. While the two-month delay remains offensive, Defendants have offered to rectify their error by allowing Plaintiff to depose Major Batterton related to the belatedly disclosed evidence. The impending trial date in this case places the Parties on a tight timeline for

6

achieving such a deposition. Still, the Court finds such a limited deposition could be quickly achieved using Zoom technology. The explanation for Defendants' delay, a "miscommunication with Counsel's staff," also tends to show Defendants made an honest mistake by failing to attach Items (8)-(12) with their expert report.

Based on this analysis, the Court finds Defendants' error as to Supplemental Disclosures (8)-(12) was substantially justified and harmless pursuant to Rule 37(c)(1). The Court, accordingly, will permit Defendants to belatedly disclose Items (8)-(12) from their Motion for Leave to File Supplemental Disclosures.

### B. Defendants' Proposed Supplemental Disclosures (1)-(7)

The second category of items – those identified in Defendants' initial disclosures and/or requested by Plaintiff in discovery – requires more analysis. The first consideration, Plaintiff's surprise at the late disclosure of the evidence, weighs in favor of exclusion. Defendants' Initial Disclosures identified "[a]ny policies, procedures, operating policies, or anything comparable for the Nelson County Sheriff's Office" as "Documents Supporting Claims or Defenses." (*See* DN 52-1, at PageID # 873). Plaintiff then requested in discovery "all documents or other tangible items identified or described in Defendants' Rule 26 initial disclosures." (*See* DN 52-3, at PageID # 890). Defendants responded on May 7, 2024 that they were "not in possession of any . . . procedures of the Nelson County Sheriff's Office." (*Id.*).

Despite this representation, over a year later, Defendants attached the NCSO General Directives Manual to their Motion for Partial Summary Judgment. (DN 32-9). Learning that Defendants possessed this document at the dispositive-motion stage of the case after Defendants' prior representations that they did not possess such documents was undeniably surprising to Plaintiff.

7

Then, Plaintiff experienced additional surprise when Defendants sought to supplement their disclosures not only to add the NCSO General Directives Manual, but also eleven other documents that Defendants "inadvertently" withheld in discovery. Some of these documents were also requested by Plaintiff during written discovery. For instance, Defendants now seek to identify Defendant Kirkpatrick's Personnel Files from Nelson County and Larue County as well as Defendant Voils Personnel File from Nelson County. (*See* DN 42-1). Plaintiff had previously requested "any documents or records related to disciplinary actions, complaints or internal investigations involving you or any other officer involved in the investigation or prosecution against Plaintiff." (DN 52-3, at PageID # 891-92). Defendants responded that these requests "sought documents not in Defendant's possession." (*Id.*). Similarly, Plaintiff sought "any performance reviews, or other documents related to job performance." (*Id.*). Defendants responded that they were "not in possession of any documents responsive to this Request" and that if any responsive documents existed, they were "in the possession of the Nelson County Sheriff's Office and/or the LaRue County Sheriff's Department." (*Id.*). The same is true for Items (5), Plaintiff's NCDC records from October 16, 2022 and (6) Call from Plaintiff to Nelson County Dispatch on October 15, 2022 because these documents were identified in the Parties' initial disclosures but not subsequently produced.

As for Item (4), the 22-D-00162 EPO Documentation, Defendants explain that the document was identified in part as an exhibit during November 21, 2024 depositions. (DN 52, at PageID # 866). While the existence of the document should not surprise Plaintiff, Defendants' attempt to now rely on the entire document at this point in the litigation, rather than just the portions previously identified, is surprising.

8

Defendants attempt to mollify the extent of their error by arguing the newly disclosed documents should have been produced with their expert disclosures on April 1, 2025, but not before the fact discovery deadline expired on December 31, 2024. But for the materials that Plaintiff previously requested in discovery, Defendants had an ongoing obligation under Federal Rule of Civil Procedure 26(e) to supplement disclosures and discovery responses in a timely manner. Fed. R. Civ. P. 26(e).

Defendants have not identified when they came into possession of the documents they now wish to disclose.[1] In other words, at some unknown point between producing initial discovery responses on May 7, 2024, and the filing of their Motion for Leave to File Supplemental Disclosures on July 16, 2025, Defendants came into possession of such information. The "summary of properties" that Defendant submits for its Supplemental Initial Disclosures indicates the file was created on February 18, 2025, hinting that Defendants were in possession of the undisclosed exhibits as of that date. Even if Defendants obtained some of this information after the fact discovery deadline expired, Defendants still should have produced these materials as a supplemental production before using such materials in an expert disclosure. Plaintiff has demonstrated plain surprise as to Defendants' late disclosure of Documents (1)-(7).

The second and third considerations, Defendants' ability to cure the surprise and the extent to which allowing the evidence would disrupt trial, also weigh in Plaintiff's favor. Defendants say Plaintiff has now been in possession of the supplemental documents since August 5, 2025 and should be able to incorporate them into his trial strategy. (DN 53). Plaintiff counters that trial prep is already underway and strategic decisions have already been made. (DN 50-1, at PageID # 828). Defendants' argument fails to consider how the surprise disclosure of these materials affected

---

[1] Instead, Defendants' response to Plaintiff's Motion to Exclude discusses when they believe Plaintiff should have had notice of their existence and potential import to this case. (*See* DN 52, at PageID # 865-867).

aspects of Plaintiff's case leading up to trial. For instance, Plaintiff was not able to use these newly produced materials during depositions, in preparing its own expert disclosures, or in responding to Defendants' Motion for Partial Summary Judgment. Defendants' conduct, in other words, precluded Plaintiff "from fairly assessing, at the proper procedural point of the case, the evidence and witnesses to be offered at trial" and prevented Plaintiff "from making rational, fully informed case-related decisions." *Silitonga v. Ky. State Univ.*, No. 3:16-CV-29-REW-EBA, 2018 WL 3969951, at * 3 (E.D. Ky. Aug. 20, 2018). Reopening discovery, especially at this late stage of litigation, would require rescheduling the trial and would "reward [Defendants] for [their] untimeliness and suggest that deadlines bend to a party's will." *Id.* (quoting *Bentley,* 2016 WL 5867496, at *11).

The importance of the evidence, the fourth factor, can cut both ways. "The more important the proof, the greater the effect of preclusion, but also the greater the harm in the tardy disclosure." *Id.* at *4 (quoting *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-150-JMH-REW, 2017 WL 2295906, at *5 (E.D. Ky. May 25, 2017)). However, courts tend to find that the more important the evidence, the more this factor favors the party disclosing the late materials or witnesses. *MV Louisville, LLC v. Frankenmuth Mut. Ins. Co.*, No. 3:20-cv-506-RGJ, 2022 WL 3362280, at *9 (W.D. Ky. Aug. 15, 2022) (citing *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 F. App'x 459, 469 (6th Cir. 2019) (additional citations omitted)). Defendants say the newly disclosed materials carry varied levels of importance, but that preclusion of each item would have a significant effect on both parties' abilities to try the case. (DN 52, at Paged # 868-69). Plaintiff submits the claimed significance of the materials to Defendants highlights the importance of Plaintiff having those items within the discovery period. (DN 50-1, at PageID # 829). Yet Plaintiff also states it is, and has been, prepared to try the case without any intention to rely on these new

10

materials. (DN 55, at PageID # 902-03). Based on these considerations, the importance of the evidence weighs slightly in Defendants' favor.

The final factor speaks directly to whether Defendants' untimely disclosures can be considered substantially justified. In evaluating the party's "explanation" for their failure, the court focuses on the feasibility of full and timely disclosure more than it does the parties' intent. *Samsung Electronics Co., Ltd. v. Nvidia Corp.*, 314 F.R.D. 190, 199-200 (E.D. Va. 2016). "An 'honest mistake' typically weighs in favor of the non-disclosing party." *Braun v. Norton Healthcare, Inc.*, No. 3:24-CV-00039-DJH-CHL, 2025 WL 1698143, at *4 (W.D. Ky. June 17, 2025) (quoting *MV Louisville*, 2022 WL 3362280, at *9); *but see Adkisson v. Jacobs Eng'g Grp., Inc.*, 2018 WL 4006782, at *3-4 (E.D. Tenn. Aug. 22, 2018) (noting that "whether the late disclosure was an honest mistake played no role whatsoever in the [Sixth Circuit's analysis in *Howe*] and "was certainly not a threshold requirement.").

Defendants couch their mistake as a "miscommunication with Counsel's staff" wherein the supplemental disclosures were not produced in conjunction with their expert witness disclosures. But examination of Defendants' behavior as to Items (1)-(7) does not reveal an honest mistake. Defendants told Plaintiff they did not have responsive documents in their possession, custody, or control. Yet at some unknown point afterward, Defendants obtained these documents and provided them to their expert witness, who then relied on them. Yet even then Defendants did not produce this group of documents. Instead, they attached one such document as an exhibit to their partial motion for summary judgment. At that point, Plaintiff realized it had never possessed the NCSO's General Directives Manual.

And even though Defendants claim to apologize for their mistake, they continue to blame Plaintiff for not catching their mistake sooner. Defendants state their tardy disclosure is "excused

11

by the fact that Plaintiff was aware of all of these items and did not raise the issue of non-disclosure until June of 2025." (DN 52, at PageID # 869 (citing *Silitonga, 2*018 WL 3969951, at * 2)). It bears repeating – Plaintiff requested the instant documents in early 2024. Defendants had countless opportunities to supplement their disclosures once they gained possession of the documents. But they did not. They waited until June 23, 2025, in the midst of dispositive-motion practice, to reveal their possession of these documents. To be clear, Defendants attached the NCSO General Directives Manual almost three months after their expert disclosure deadline, over six months after the fact discovery deadline closed, and over one year after Defendants represented that they did not possess the document. Plaintiff had no obligation to continue seeking the discovery that Defendants represented was not in their possession and appropriately took Defendants at their word. Even if Plaintiff should have brought Defendants' mistake to their attention following their expert disclosures, Defendants had already extensively delayed production of those documents.

After considering the *Howe* factors, the Court finds Defendants' delayed disclosure of Items (1)-(7) here is neither harmless, nor substantially justified. As Shakespeare has warned, "delays have dangerous ends." William Shakespeare, King Henry the Sixth, Act 3, Sc. 2; *see also* William Shakespeare, Twelfth Night, Act 2, Sc. 3 ("In delay there lies no plenty."). Defendants' delay in disclosing Items (1)-(7) warrants exclusion.

## ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion for Leave to File Supplemental Disclosures (DN 42) is **GRANTED in part and DENIED in part** as follows:

(1) Items (8)-(12) may be produced and used as supplemental disclosures.

(2) Items (1)-(7) are not permitted as supplemental disclosures.

(3) To the extent that Plaintiff wishes to depose Major Batterton, the Parties shall confer

12

promptly to arrange and effectuate such deposition.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude Untimely Disclosed Evidence (DN 50) is **GRANTED in part and DENIED in part** as follows:

(1) Defendants' Items (1)-(7) are excluded from use in this litigation, including at trial.

Copies:         Counsel of Record