UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JEFFREY FULKERSON     Plaintiff

v.     Civil Action No. 3:23-cv-520-RGJ

KEEGAN KIRKPATRICK, et al.     Defendants

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on Plaintiff Jeffrey Fulkerson's ("Fulkerson") omnibus motion *in limine* [DE 71]. Defendants responded [DE 74], and the parties filed supplemental briefing as requested by the Court [DE 78; DE 79]. Briefing is complete, and the matter is ripe. For the reasons set forth below, Fulkerson's first motion *in limine* to exclude evidence of his prior lawsuit against the Nelson County Sheriff's Office ("NCSO") is **GRANTED**; his second motion *in limine* to exclude evidence of the EPO taken out against Fulkerson is **GRANTED IN PART** and **DENIED IN PART**; and his ninth motion *in limine* to exclude testimony concerning evidence previously excluded by the Court is **GRANTED IN PART** and **DENIED IN PART**.

**I.     BACKGROUND**

On October 16, 2022, NCSO Deputy Keegan Kirkpatrick ("Kirkpatrick"), along with two other deputies, were dispatched to Fulkerson's residence in response to a 911 call by a neighbor who heard yelling coming from Fulkerson's address [DE 32-1 at 174; DE 39 at 697; DE 32-4]. The deputies were aware of an active emergency protective order ("EPO") against Fulkerson and, upon arrival, learned that Fulkerson's girlfriend, Angie Fenech ("Fenech") was inside. [DE 32-2, Kirkpatrick Dep., at 200]. Fulkerson stated in his deposition that Fenech had called him requesting

1

to see their daughter, and that pursuant to his call with NCSO Deputy Downs, he believed it would not be a violation of the EPO for Fenech to initiate contact and come to his house. [DE 36-2 at 629-30]. The deputies arrested Fulkerson for violating the EPO and told Fulkerson that any contact with Fenech constituted a violation, regardless of who initiated the contact. [*Id.*]. A security camera positioned at Fulkerson's backdoor captured the beginning of the interaction between Fulkerson and the deputies. [*Id.*; DE 32-3]. The video captured Fulkerson and Kirkpatrick becoming increasingly hostile toward one another and raising their voices, with Kirkpatrick eventually moving toward and grabbing Fulkerson before leaving the camera's view. [DE 32-3].

Fulkerson alleges that Kirkpatrick rushed him, punched him in the gut, and tackled him to the ground while Fulkerson was handcuffed. [DE 1 at 4]. Kirkpatrick counters that he used soft-empty-hand-control to move Fulkerson to a police vehicle, and that Fulkerson dropped to the ground on his own. [DE 39-6, Def.'s Resp. to Interrogs., at 745; DE 39-3, Kirkpatrick Dep., at 724]. Fulkerson also alleges that Kirkpatrick's supervisor, Brian Voils ("Voils"), attempted to cover up the assault by threatening to charge Fulkerson with falsifying a police report if he made a complaint. [DE 1 at 5].

Pursuant to these events, Fulkerson brought a complaint alleging (1) Section 1983 excessive force against Kirkpatrick; (2) Section 1983 supervisory liability against Voils; (3) Conspiracy to violate Fulkerson's Fourth Amendment rights against both Defendants; (4) Battery against Kirkpatrick; and (5) Negligent supervision and training against Voils. [DE 1 at 6-10]. Defendants filed a motion for partial summary judgment as to Counts 2, 3, and 5. [DE 32-1]. In response, Fulkerson noted that many of the documents cited to in the motion for partial summary judgment, though disclosed in Defendants' initial disclosures, were never produced to Fulkerson.

[DE 39 at 699-700]. Realizing their mistake, Defendants filed a motion for leave to file supplemental disclosures [DE 42], asking the Court to allow in the following documents:

(1) Deputy Kirkpatrick's personnel file in Nelson County
(2) Defendant Kirkpatrick's personnel file in LaRue County;
(3) Sergeant Voils' personnel file;
(4) EPO Documentation 22-D-00162;
(5) Plaintiff's records from NCDC 10-16-2022;
(6) 10-15-2022 call from Plaintiff to Nelson County Dispatch;
(7) NCSO Directives Manual;
(8) Plaintiff 2022 CFS Log;
(9) Plaintiff Citation 9-12-2024
(10) Redacted Body Camera Footage 9-12-2024;
(11) Plaintiff CFS Log 12-1-2022
(12) Fulkerson Call History 4-1-2025

DE 42; DE 42-1]. Fulkerson opposed the motion and filed his own motion to exclude the untimely filed evidence. [DE 49; DE 50]. After full briefing on the matter, the magistrate judge granted in part and denied in part the Defendants' motion to file supplemental disclosures. [DE 56]. The Court allowed production of supplemental disclosures with respect to items (8)-(12) and denied the Defendants' request with respect to items (1)-(7). [DE 56].

In anticipation of trial, both parties filed motions *in limine* to exclude several pieces of evidence and arguments. [DE 59; DE 71]. The Court ruled on all but three motions at the final pretrial conference. [DE 77]. Still to be decided are Fulkerson's first motion *in limine* to exclude evidence of his prior lawsuit against NCSO, Fulkerson's second motion *in limine* to exclude evidence of the EPO taken out against him, and Fulkerson's ninth motion *in limine* to exclude any testimony concerning the evidence previously excluded by the Court. This memorandum opinion and order addresses all remaining issues in the parties' pretrial motions.

## II. STANDARD

Federal district courts have the power to exclude irrelevant, inadmissible, or prejudicial evidence *in limine* under their inherent authority to manage trials. *Luce v. United States*, 469 U.S.

3

38, 41 n. 4 (1984) (citing Fed. R. Evid. 103(c)). Yet, the "better practice" is to defer evidentiary rulings until trial unless the evidence is clearly inadmissible on all potential grounds. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Courts favor this posture so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010) (internal citations omitted). When this Court issues a ruling *in limine*, it is "no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984)). Thus, the Court may alter or amend a prior *in limine* ruling at trial. *Luce*, 713 F.2d at 1239.

### III.   DISCUSSION

A. <u>Plaintiff's First Motion *in Limine* to Exclude Evidence of Plaintiff's Prior Lawsuit Against the NCSO</u>

Fulkerson moves to exclude any evidence of his prior lawsuit against the NCSO. [DE 71 at 1022]. He asserts that any evidence of other litigation is inherently prejudicial and lacks probative value and thus should be excluded under Federal Rules of Evidence 401-404. [*Id.* at 1022-23]. He also argues that because no documentation regarding his prior lawsuit has been exchanged during discovery, the lawsuit must be excluded pursuant to Rule 1002. [*Id.* at 1022]. Defendants argue that Fulkerson's prior lawsuit may suggest a financial motive in pursuing this litigation because "knowledge that filing a lawsuit might result in a settlement . . . could lead Plaintiff to fabricate his testimony." [DE 74 at 1049-50]. They therefore argue that the lawsuit is relevant to Fulkerson's credibility. [*Id.*]. Defendants further assert that the lack of documentation is irrelevant because the parties agree that there was a lawsuit that was settled out of court. [*Id.* at 1050]. Because many of the arguments asserted by Defendants assert inclusion to show financial

4

motive or evidence of litigation-prone character, the Court will also address the motion under Rule 404(b).

As an initial matter, under Rule 1002, "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Rule 1002 only applies if a document's "contents are sought to be proved." Fed. R. Evid. 1002 advisory committee notes on proposed rules. "[A]n event may be proved by nondocumentary evidence, even though a written record of it was made." *Id.* Here, Rule 1002 does not operate to exclude evidence of the prior lawsuit and settlement simply because a written record of that settlement was made; a witness with personal knowledge of the lawsuit could testify as to his or her own knowledge. *See United States v. Conteh*, 234 F. App'x 374, 387 (6th Cir. 2007) (explaining that the best evidence rule does not apply when a witness testifies from personal knowledge).

Only evidence that is relevant is admissible at trial. Fed. R. Evid. 402. Evidence is relevant only if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice does not mean the damage to a [party's] case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis." *United States v. Newsom,* 452 F.3d 593, 603 (6th Cir. 2006). The Court enjoys broad discretion when it decides questions of relevance and possible prejudice. *See Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004).

"Evidence of other crimes or bad acts is not admissible 'to prove the character of a person in order to show action in conformity therewith,' although such evidence may be admissible for other purposes, including motive, intent, and knowledge." *Easley v. Haywood*, No. 1:08-CV-601, 2015 WL 1926399, at *2 (S.D. Ohio Apr. 28, 2015) (citing and quoting Fed. R. Evid. 404(b)). Therefore, such evidence must be probative of a material issue other than character. *United States v. Hardy,* 228 F.3d 745, 750 (6th Cir.2000).

First, it is not clear that evidence of Fulkerson's prior lawsuit would survive the Rule 401 relevancy requirement. It is mere assumption to assert, as Defendants do, that Fulkerson's prior settlement makes it more likely that Fulkerson made up the instant allegations to make quick money.

Second, even assuming Rule 401 does not operate to exclude evidence of the prior lawsuit, Rule 403 certainly does. Fulkerson's prior lawsuit and settlement have limited probative value because they are wholly unrelated to the facts of this case. The central issue to be decided in this case is whether Fulkerson's or Kirkpatrick's version of events is true, and a prior lawsuit has little bearing on that issue. Defendants argue that the prior lawsuit is relevant to the issue of Fulkerson's credibility because it shows "some kind of financial motive, such as knowledge that filing a lawsuit might result in a settlement." [DE 74 at 1049]. Yet, a prior lawsuit that resulted in settlement does not necessarily suggest some dishonest motive or litigiousness in Fulkerson. *See Easley v. Haywood*, No. 1:08-CV-601, 2015 WL 1926399, at *2 (S.D. Ohio Apr. 28, 2015) (noting that "as a general matter," prior lawsuits lack probative value "unless [they] have been shown to be fraudulent")(quoting *Henderson v. Peterson,* No. 07–2838, 2011 U.S. Dist. LEXIS 76799, at *16–17, 2011 WL 2838169 (N.D. Cal. July 15, 2011). If anything, the fact that the prior suit ended in settlement may suggest that it had merit. And presumably, any plaintiff who has been injured files

a lawsuit with the understanding that it may result in compensation for his or her injury; expecting compensation for an injury does not equate to frivolous money-grabbing. In other words, a prior lawsuit that resulted in settlement does not by itself tend to expose a lack of credibility or a suspicious motive in a current lawsuit, so it has little probative value as to Fulkerson's credibility. The prior lawsuit also carries a substantial risk of unfair prejudice to Fulkerson. Even though his prior lawsuit should not weigh on his credibility, Defendants intend to argue—and the jury could very well believe—that the lawsuit demonstrates Fulkerson's litigiousness and interest in a "quick payday." [DE 74 at 1050]. This creates a risk of a verdict based on an improper basis—that is, an assumption that Fulkerson's lawsuit is baseless simply because he has received a settlement from a similar lawsuit in the past.

Third, Rule 404(b) prevents Defendants from using lawsuits that occurred under different circumstances or were brought against different individuals to show bias or motive for filing the instant lawsuit. *Easley*, 2015 WL 1926399, at *2 (citing *Henderson*, U.S. Dist. LEXIS 76799, at *16–17, 2011 WL 2838169 (N.D. Cal. July 15, 2011) (granting the inmate plaintiff's motion in an excessive force case to "preclude Defendants from presenting evidence concerning other complaints and lawsuits initiated by him that are unrelated to the incident forming the basis of this action," because "[a]s a general matter, unless the prior lawsuits have been shown to be fraudulent, the probative value of evidence pertaining to a plaintiff's litigation history is substantially outweighed by the danger of jury bias")). "Such evidence should be admitted only in limited circumstances when underlying facts between the incidents are similar, and therefore relevant to the instant case." *Id.*

The Sixth Circuit follows a three-step process when considering admissibility under Rule 404(b): (1) "the district Court must decide whether there is sufficient evidence that the other act in

question actually occurred"; (2) "if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character"; and (3) "if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect." *United States v. Clay,* 667 F.3d 689, 693 (6th Cir. 2012) (citation omitted).

The parties do not disagree or seek to disprove that the previous lawsuit occurred, thus satisfying the first step in the Rule 404(b) analysis. However, the second and third steps of the analysis present cause for concern. As stated previously, Fulkerson's prior lawsuit and settlement are wholly unrelated to the facts of this case and thus, have limited if any probative value. Moreover, as Defendants intend to argue that the lawsuit demonstrates Fulkerson's litigiousness and interest in a "quick payday," [DE 74 at 1050], the Court is concerned about the prejudicial effect of such a statement. This is especially true because Fulkerson's prior lawsuit was ultimately settled. "The charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged, unless the previous claims made by the party are shown to have been fraudulent." *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988) (citing *McCormick on Evidence* § 196 at 578–81 (3d ed. 1984)). There is no evidence the record that the prior suit was fraudulent. Defendants have not shown that they intend to offer the prior lawsuit for a material point other than to prove that Fulkerson's current suit and "actions are in conformity with his character as a litigation-prone individual—precisely the type of character evidence precluded by Rule 404(b)." *Baskin v. Pepsi MidAmerica Co.,* No. 5:13-CV-00030-TBR, 2015 WL 363906, at *1–2 (W.D. Ky. Jan. 27, 2015).

Accordingly, the Court will grant Fulkerson's motion *in limine* to exclude evidence of his prior lawsuit against the NCSO.

B. Fulkerson's Second Motion *in Limine* to Exclude Evidence of the EPO Taken Out Against Fulkerson

Fulkerson argues that the contents of the EPO should be excluded because they are highly prejudicial. [DE 71 at 1023]. He asserts that the violation of the EPO is relevant and admissible, but that the "facts and allegations contained in the EPO documentation" are not relevant and prejudicial. [DE 78 at 1068-69]. Defendants argue that the EPO provides important context for understanding the events leading to the alleged use of force. [DE 74 at 1005]. That is, to understand the perspective of the deputies on the scene and whether they acted reasonably, the jury would need to understand the underlying allegations in the EPO. [DE 79 at 1104]. Defendants also argue that the severity of the allegations in the EPO, coupled with Fenech's decision to later dismiss the EPO, "are relevant to her credibility as a witness." [DE 74 at 1050; DE 79 at 1104].

Both the existence of the EPO and the contents of the EPO are relevant under the lenient standard of Rule 401. The contents of the EPO suggest that Fulkerson may have been violent in the past, and thus provide insight into Kirkpatrick's mindset in the interaction, which is relevant to the overarching § 1983 question of whether he acted as a "reasonable police officer at the scene." *See Boyd v. Baeppler*, 215 F.3d 594, 601 (6th Cir. 2000). Determining whether a police officer used excessive force for § 1983 purposes requires understanding "what a reasonable police officer would believe to be lawful based upon the information then possessed." *Id.* at 600. As a result, the information that Kirkpatrick possessed about Fulkerson at the time is relevant to determining whether the decisions he made at the scene were reasonable or unconstitutional. *Winer v. Sturgill*, No. CV 5:22-162-DCR, 2023 WL 4471479, at *5 (E.D. Ky. July 11, 2023) ("[D]etermining whether the amount of force that Sturgill used while arresting Winer was reasonable requires considering the totality of the circumstances, including the 'information available to [Sturgill] at

the time [he] used force.'") (citing and quoting *Simmonds v. Genesee Cnty.*, 682 F.3d 438, 445 (6th Cir. 2012)).

Fulkerson asserts that Kirkpatrick's knowledge is not relevant to the only question at issue: which party's version of events is true. [DE 78 at 1069]. He notes that on one side, "Plaintiff alleges he was punched and tackled while handcuffed behind his back, which is undoubtedly an unreasonable use of force." [*Id.*]. And on the other side, Kirkpatrick contends he "used open hand contact to guide Plaintiff and that Plaintiff voluntarily sat down," which Fulkerson stipulates is not an unreasonable use of force. [*Id.*]. Even if Fulkerson is correct that the jury need only determine whose story they believe to resolve the case, information about why the deputies were at the scene and what they knew about Fulkerson may aid in this determination. Jurors will be tasked with watching the video of Kirkpatrick and Fulkerson, interpreting Kirkpatrick's on-screen conduct, and forming a belief about what occurred off-screen. Any information that contextualizes Kirkpatrick's conduct would be relevant to this inquiry.

Moreover, the *existence* of the EPO survives the Rule 403 balancing test. That is, the fact that officers were responding to an EPO violation is not so unfairly prejudicial to Fulkerson as to warrant its exclusion. Rather, this fact is important context for understanding why officers were properly at Fulkerson's residence and why they arrested him. And the mere fact that Fulkerson was the subject of a protective order does not create a substantial risk that the jury will base its decision on an improper conclusion about him.

Whether the *contents* of the EPO survive the balancing test of Rule 403 is a different question, however. The risk of unfair prejudice "can happen when 'the prior-act evidence so shocks the conscience that the jury may decide that the defendant is a bad person and deserves to be convicted, even if his guilt were unproven in the instant case, 'because a bad person deserves

10

punishment.'" *United States v. Hazelwood*, 979 F.3d 398, 412 (6th Cir. 2020) (quoting *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018)). Here, Defendants seek to introduce specific facts of the EPO including "allegations of strangulation, hitting Ms. Fenech's head against a car, and threats to 'take [Ms. Fenech] to Wilson creek.'" [DE 79 at 1104; DE 78-2, Emergency Protective Order, at 1094]. These specific contents of the EPO "so shock[] the conscience that the jury may decide that the [plaintiff] is a bad person" and decide the case on that basis alone. *See Hazelwood*, 979 F.3d at 412. This risk of prejudice to Fulkerson significantly outweighs the probative value of the EPO contents. Defendants are correct that the EPO contents may be probative of Kirkpatrick's perspective at the scene—i.e., that he was dealing with a violent person—and thus the reasonableness of his response. Yet, the minutiae of *why* Fulkerson was under an EPO are not necessary to realize that value. This probative value could come just as easily from evidence that Fulkerson was subject to an EPO due to acts of domestic violence, coupled with an explanation of the purpose of EPOs and what an officer would consider in responding to an EPO violation. Accordingly, Fulkerson's second motion *in limine* is granted as to the specific acts detailed in the EPO [DE 78-2 at 1094] but denied as to the existence of the EPO and the fact that the EPO was issued due to violent behavior. *Cf. Foulk v. Charrier*, 262 F.3d 687, 699 (8th Cir. 2001) (affirming district court's decision to exclude evidence showing the "specific nature" of plaintiff's prior felonies due to unfair prejudice but allowing evidence of the fact that plaintiff had been convicted of two felonies).

C. Fulkerson's Ninth Motion *in Limine* to Exclude Testimony Concerning Evidence Previously Excluded by the Court

Finally, Fulkerson moves to exclude any testimony concerning the evidence previously excluded by the Court and asks that Defendants be prohibited from referencing those documents or their contents at trial. [DE 71 at 1026]. Defendants agree with Fulkerson but ask that their

11

witnesses be permitted to testify as to their own independent knowledge of the topics contained within the excluded documents. [DE 74 at 1053].

To the extent that witnesses seek to testify to their own personal knowledge of information that happens to also be contained within the excluded documents, such testimony is admissible. For instance, although Kirkpatrick's personnel and training files have been excluded, he may testify regarding his job performance and training to the extent he has independent knowledge of those matters. To the extent that a witness seeks to testify about the content of the excluded documents or refer to an excluded document, however, such testimony is inadmissible.

As a result, Fulkerson's motion *in limine* to exclude testimony concerning evidence previously excluded by the court is granted to the extent that Defendants seek to admit or reference the excluded documents at trial.

### IV. CONCLUSION

For the reasons set forth above, the Court **ORDERS** as follows:

1. Fulkerson's first motion *in limine* to exclude evidence of his prior lawsuit against the NCSO is **GRANTED**.

2. Fulkerson's second motion *in limine* to exclude evidence of the EPO taken out against him is **GRANTED IN PART** and **DENIED IN PART**.

3. Fulkerson's ninth motion *in limine* to exclude testimony concerning evidence previously excluded by the Court is **GRANTED IN PART** and **DENIED IN PART**.

Rebecca Grady Jennings, District Judge
United States District Court

October 29, 2025